UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAL LOJEWSKI, SMITH GARCIA, DANIELLE GARCIA, MANUEL ACEVEDO, AND ISAMAR DELACRUZ, *on behalf of themselves and all others similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>GROUP SOLAR USA, LLC, SOLAR MOSAIC, INC., SALAL CREDIT UNION AND DANIEL YOMTOBIAN CORP d/b/a SOLAR PROGRAM<br><br>*Defendants.* | **Case No. 22-cv-10816**<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Rafal Lojewski ("Mr. Lojewski"), Smith Garcia ("Mr. Garcia"), Danielle Garcia ("Mrs. Garcia"), Manuel Acevedo ("Mr. Acevedo"), and Isamar Delacruz ("Ms. Delacruz"), collectively Plaintiffs herein, by their attorneys, bring the following Complaint on an individual basis and also, with regard to certain claims specified herein, on behalf of themselves and all others similarly situated and allege and complain of the Defendants.

## **NATURE OF ACTION**

1.      The instant lawsuit seeks to vindicate the rights of New York consumers who fell victim to deception at the hands of Defendant Group Solar USA, LLC ("Group Solar").

2.      Plaintiffs seek to represent a class of similarly situation consumers with regard to Defendants failure to deliver to the class "Welcome Checks" that were promised to consumers as an inducement to enter into transactions with Defendants.

3.      In addition, Plaintiffs bring individual claims regarding certain deceptive acts and practices perpetrated by Defendants in connection with the sale and financing of residential solar panels.

4.      Plaintiffs bring individual and class claims against Defendants for violations of the New York General Business Practice § 349 ("NYGBL § 349"), New York General Business Practice § 350 ("NYGBL § 350"), New York Personal Property Law § 401, *et seq.*, breach of contract and unjust enrichment.

5.      Certain Plaintiffs bring individual claims against Defendants for breach of the Magnuson-Moss Warranty Act ("MMWA") 15 U.S.C. §§ 2301, *et seq.* and other state laws.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because it is brought as a class action, on behalf of a Class of over 100 Class Members, whose claims aggregate in excess of $5 million, and one or more members of the class are citizens of a State different from one or more Defendant.

7.      Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

8.      Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this District because a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conduct business here.

## PARTIES

10.     Plaintiff Rafal Lojewski is a natural person and citizen of New York residing in Brooklyn, New York.

11.     Plaintiffs Smith and Danielle Garcia are natural persons and citizens of New York residing in the Bronx, New York.

12.     Plaintiffs Manuel Acevedo and Isamar Delacruz are natural persons and citizens of New York residing in Bronx, New York.

13.     Plaintiffs are "consumers" as that term is defined in the New York General Business Law § 349 – 350.

14.     Defendant Salal Credit Union is a state-chartered banking association located and chartered in Seattle, Washington.

15.     Defendants Group Solar and Solar Mosaic are Delaware based corporations authorized to do business in New York.

16.     Daniel Yomtobian Corp. d/b/a Group Solar is a New York Corporation.

17.     All Defendants regularly conduct business in the state of New York.

## FACTS

### As to Plaintiff Rafal Lojewski

18.     Early in 2021, Mr. Lojewski began to research home solar panel programs.

19.     He saw an ad in Facebook for Group Solar, provided his personal information and received a call from a Group Solar to set up a meeting.

20.     After a series of meetings at his home, Mr. Lojewski decided to move forward with the panel installation.

21.     Central to Mr. Lojewski's decision to proceed was Group Solar's promise to provide "Welcome Checks" in the amount of $3,862.92.

22.     Specifically, Solar Group presented Mr. Lojewski with a written proposal that stated, *inter alia*, "Customer will receive a $3,962.92 welcome check after the installation of the solar system is complete."

23.     On this basis, Mr. Lojewski signed various documents, including a Retail Installment Contract and Security Agreement ("RIC") which listed Group Solar as the "seller" and which stated, *inter alia*, that "This contract is assigned to Salal Credit Union. . . . without recourse".

24.     Group Solar provided a "Residential Clean Energy Program" financial worksheet which specified a one-time Welcome Check Incentive totaling $3,862.92.

25.     Mr. Lojewski never received the agreed upon Welcome Check totaling $3,862.92.

26.     Instead, Plaintiff received a check in the amount of $1,287.64 from Group Solar.

27.     Plaintiff Lojweski and his wife, Anna, repeatedly attempted to contact Group Solar regarding the failure to deliver the remainder of the Welcome Check funds, including by phone, email and text.

28.     No one responded to the Lojewski's emails.

29.     Eventually, Mr. Lojewski was able to reach Group Solar by phone and was informed that the company had a change in management but that they would look into the matter and get back to him.

30.     No one called him back.

31.     Mr. Lojewski's texts were eventually responded to by text dated October 4, 2021, which acknowledged the promise to pay the remaining Welcome Check sums, stating as follows:

> Hello, Rafal!
> Sorry for all delays and thank you for your patience.
> There is a change in company ownership and it will take 2/3 weeks to
> get back to normal. . . . I requested to process your 2nd and 3rd part of
> Welcome Check few times. [sic]. Office assured me that checks will
> be issued and asked to be patient until the new owners take over. . . .
> There are few clients with the same issue. It'll be taken care off soon.
> [sic].

32.     Notwithstanding this text, no checks were ever sent.

33.     Frustrated that the promised Welcome Checks had not been delivered, Plaintiff

placed a freeze on his payments to Salal Credit Union.

34.     Mr. Lojweski subsequently received a call from Salal Credit Union.

35.     Despite the fact that Salal Credit Union, as an assignee, is subject to all claims

and defenses that could be asserted against Group Solar, the Salal Credit Union representative

with whom Mr. Lojewski spoke stated in sum and substance that non-payment of the Welcome

Checks was not Salal's problem, that Salal Credit Union would not offer any relief in this regard,

and that Plaintiff had to keep paying his loan in order to avoid his credit score being damaged.

36.     Fearing the ramifications of not paying off his loan with Defendant Salal Credit

Union, Plaintiff lifted his hold on payments and has since been making his payments on time.

37.     Mr. Lojewski requested Group Solar to fix the leaks on the roof.

38.     After multiple unsuccessful attempts to reach Group Solar, Mr. Lojewski, fearing

the solar panels will fly off in the wind and hurt a pedestrian, went up on his roof and fixed, to the

best of his ability, Group Solar's faulty installation.

### *As to Plaintiffs Smith and Danielle Garcia*

39.     On or about March 6, 2021 Plaintiffs Smith Garcia ("Mr. Garcia") and Danielle

Garcia ("Mrs. Garcia") who are husband and wife (collectively the "Garcias") were contacted by

a salesman representing Defendant Group Solar.

40.     The salesman detailed various incentives that piqued the Garcias' interest, including, but not limited to, a total of three (3) Welcome Checks totaling $6,606.00, which would purportedly cover the first year of financing charges for the panels.

41.     The promise to pay the Garcias the Welcome Checks was set forth, *inter alia*, in a written proposal provided to them that stated, *inter alia*, "Welcome Check Incentive. . . . $6606".

42.     That proposal also stated that the "System Size" was "12.4 kw"; "Number of Panels. . .  30" and listed a "Total System Price" of $82,000.

43.     The "Estimated Annual Solar Production" for the Garcias system was "1600 kWh". *i.e.* sixteen hundred kilowatt hours.

44.     The Garcias eventually decided to move forward with the purchase and installation.

45.     On June 2, 2021 when a Group Solar representative came to the Garcias' residence with the finance documents ready to be executed, Mrs. Garcia was not present.

46.     The financing agreement lists Solar Mosaic as the lender and Mrs. Garcia as the borrower, lists a loan amount of $82,000, states an APR of 4.98% and requires 16 payments of $367.48, to be followed by 281 payments of $496 (and a final payment of 491.57).

47.     The salesman was acting as an agent of both Group Solar and Solar Mosaic at the time that he negotiated with the Garcias and induced them to sign the agreement purportedly between Ms. Garcia and Solar Mosaic.

48.     The financing agreement does not reference the promise to pay the Garcias the Welcome Checks, which were promised to them as an inducement to become a party to the contract and which were promised incidental to negotiations regarding the transaction.

49.     The representative informed Mr. Garcia that it would be acceptable for him to sign on his wife's behalf and encouraged him to do so.

50.     Trusting that the representative was not misleading him, Mr. Garcia electronically signed the documents on his wife's behalf on an iPad when prompted.

51.     Neither Mr. Garcia nor Mrs. Garcia was given an opportunity to review the documents or permitted to scroll through the documents on the iPad.

52.     The Garcias were provided by Group Solar with an invoice, dated June 2, 2021 that showed payment of $82,000.00 for a "12.4 kW Solar Photo-Voltaic System", described as "A Turnkey Grid Connected 12.4kW Solar Photo-Voltaic System Consisting of Mono-Crystalline Solar Panels".

53.     That invoice lists Solar Program, rather than Group Solar as the seller/installer.

54.     Solar Program is a d/b/a for Defendant Daniel Yomtobian Corp.

55.     Upon information and belief Daniel Yomtobian is both the principle (either individually or through an LLC which he controls) of Daniel Yomtobian Corp. and an employee or principle of Group Solar.  See, *e.g.* https://www.zoominfo.com/p/Daniel-Yomtobian/-1831025951 (listing Mr. Yomtobian as working at Group Solar and listing his email as d***@groupsolarusa.com.)

56.     The solar panels were installed in September 2021 but the Garcias did not see any change in their electric bill.

57.     The first statement was sent from Group Solar's partner bank, Defendant Solar Mosaic on October 5, 2021.

58.     Concerned that the panels were not generating power, the Garcias reached out to their service provider, ConEdison, and confirmed that the panels were not producing any energy.

59.    The Garcias reached out to Group Solar, and, after multiple attempts, were finally able to speak with a representative who said they would send over a technician to fix the issue.

60.    From October 2021 to April 2022 Group Solar sent multiple technicians to work on the panels with no success.

61.    The visits by the technicians caused significant inconveniences to the Garcias, including to their work schedules.

62.    Specifically, in order to allow the technicians to access the circuit breakers in the house, either Mr. or Mrs. Garcia had to stay home from work.

63.    Each time a technician inspected the panels, the Garcias were assured that it would be the last visit and the issue with the panels was resolved after the technician's – but that was never the case.

64.    The panels did not generate energy until June, 2022 and the Garcias' electric bill increased rather than decreased during that time.

65.    Nonetheless, the Garcias were still charged $372.00 a month by Solar Mosaic for the faulty panels on top of a $315.00 a month Con Edison Electric Bill.

66.    The Garcias reached out to Solar Mosaic multiple times regarding the panels not generating energy and were informed by Solar Mosaic that any issue regarding the panels not operating must be disputed with Group Solar directly.

67.    The solar panels only became operational as a result of Mr. Garcia's own research and labor.

68.    The Garcias did not receive all three Welcome Checks.

69.    They received a check for $2,400.00 and another for $1,600.00, *i.e.* a total of $4,200.

70.     As set forth above, they were promised $6,606.

71.     During their back and forth calls with Group Solar regarding the panels not functioning, the Garcias also brought up the matter of the missing check with Group Solar.

72.     Group Solar repeatedly promised the Garcias that the missing check would be sent but never delivered any such check.

73.     Despite the panels still not generating energy to date, Group Solar no longer responds to the Garcias calls nor does anyone get back to them with an answer as to why the panels do not work.

74.      In order to avoid potential negative reporting on Mrs. Garcia's credit reports, the Garcias continue to pay their loan with Defendant Solar Mosaic.

75.     The burden of this loan (which, until June 2022, came on top of the Garcias' regular energy bill in light of the fact that the panels don't work) has placed a major financial strain on the Garcia.

76.     The timely repayments of the loan with Solar Mosaic on top of the monthly payments for an energy bill they did not expect or budget to have to pay has resulted in the tardy payments of their other bills.

77.     Plaintiffs have suffered and continue to suffer mentally, emotionally, and monetarily due to Defendant Group Solar and Solar Mosaics' misconduct.

### *As to Plaintiffs Manuel Acevedo and Isamar Delacruz*

78.  In mid-2020, Plaintiff Manuel Acevedo, came across an Instagram post by Group Solar regarding the solar panel program they were offering.

79.     Mr. Acevedo filled out a form through a link on Instagram and Group Solar contacted him shortly thereafter.

80.     A meeting was scheduled and a representative of Group Solar, "James", visited Plaintiff in his home in New York.

81.     Plaintiff, whose predominate language is Spanish, had to call and request that his adult daughter, Plaintiff Isamar Delacruz, attend the meeting to translate for him.

82.     During the conversation, James presented Mr. Acevedo and his daughter with various incentives that Group Solar provided as part of their solar program, one of which was three (3) Welcome Checks from Group Solar, totaling $4,843.80.  According to James, these checks were to cover the first year of payments towards the loan for the panels.

83.     The Welcome Check incentive was also set forth in writing.  Specifically, the Customized Solar Solution document references a "Group Solar incentive" for a total of "$4843.80".

84.     Further, Mr. Acevedo was also informed that the panels would be able to generate enough energy for all three (3) living spaces of his home.

85.     When it came to the point of discussing financing in their conversation, after reviewing Mr. Acevedo's current estimated credit score and history, Mr. James urged that Mr. Acevedo be the main account holder for the financing of the panels but that his daughter, Ms. Delacruz, be listed as a co-signer.

86.     James stated this would help them obtain a lower interest rate.

87.     James eventually left that day without any documents being signed.

88.     Mr. Acevedo ultimately decided to move forward with installation of the panels and James was contacted for another meeting.

89.     On November 11, 2020, James arrived at Mr. Acevedo's home – however, Ms. Delacruz was not present.

90.    Because Ms. Delacruz was unable to make it to the meeting, Mr. Acevedo had to rely on his limited English to understand what James was discussing or informing him.

91.    James presented paperwork to Mr. Acevedo and requested that he sign at specific areas on the documents.

92.    When Mr. Acevedo asked what he was being requested to sign, James told Mr. Acevedo that they were documents needed to begin the application process for the panels.

93.    James further stated that the final contract for the financing of the panels would be signed at a later date.

94.    James then stated that they needed Ms. Delacruz's signature but given that she not available, Mr. Acevedo's wife, Ms. Fatima Garcia, who was present, could sign on her behalf as her mother.

95.    Fully trusting the Group Solar representative, Ms. Garcia signed where James instructed.

96.    Notwithstanding James' representations, the documents the Acevedos signed were not limited to any application but included the Retail Installment Contract and Security Agreement ("RIC").

97.    The RIC is a boilerplate document that includes an assignment without recourse to Salal Credit Union in its standardized terms.

98.    The panels were not installed until January of 2021.

99.    Despite not having the panels, Plaintiffs Acevedo and Delacruz were already getting charged for the month of December.

100.    In March, 2021, Mr. Acevedo received two of the Welcome Checks, totaling $3,229.20.

101.    Defendants have failed to deliver the third Welcome Check despite repeated requests.

102.    In September 2021, almost 9 months after the panels had been installed, Mr. Acevedo and his wife notice that their energy bill for their home was not demonstrating any change – in fact, it seems to risen.

103.    Upon further investigation and calls to their energy provider, ConEdison, Mr. Acevedo was informed that there were no solar activated on his account.

104.    ConEdison confirmed that while they had been informed of the panels being installed, the final processing and activation of the panels had not been conducted by Group Solar.

105.    Shocked, Mr. Acevedo, with the help of his wife, began to contact Group Solar several times a week with no success – no one picked up the phone or got back to them.

106.    Eventually, they were able to locate Group Solar's address and went to visit Group Solar's office in person in October 2021 in order to complain.

107.    Initially, the representative they were met with stated incorrectly that the panels had been active since March 2021, *i.e.* two months after installation.

108.    After much back-and-forth and additional visits to the Group Solar office, the panels were officially activated in January 2022, *i.e.,* a year after installation.

109.    However, Plaintiff Acevedo later learned from ConEdison, that even then only one floor was connected to the panels when it was supposed to be all three.

110.    Mr. Acevedo called Salal Credit Union to inform the Defendant of the situation.

111.    Mr. Acevedo informed Salal Credit Union that Group Solar wasn't honoring their incentive program and requested that they intervene.

112.   Salal Credit Union informed Mr. Acevedo that they had nothing to do with the incentive program and payments still needed to be made.

113.   Mr. Acevedo went to speak with the owner of Group Solar in person at their Queens office to complain about the solar panel activation and the Welcome Checks.

114.   Group Solar's owner informed Mr. Acevedo that he would look into these matters and would communicate with Salal Credit Union to hold off payments.

115.   Faced with $400 a month payment for panels that were not activated, as well as the shortfall credited by failure to deliver the Welcome Checks, Mr. Acevedo has struggled to make the payments and has sometimes paid late, causing damage to his credit.

116.   Defendants' misconduct has not only impacted the Plaintiffs financially but has also caused a great deal of stress and aggravation in their life, particularly between Mr. Acevedo and his family.

## CLASS ALLEGATIONS

117.   Plaintiffs bring this action as a class action, on behalf of the following class, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

Each person who,

a)   with regard to a residential property in New York State;
b)   was provided by one or more Defendants with a solar panel installation and financing proposal referencing delivery of Welcome Checks as a sum certain;
c)   who accepted the proposal;
d)   and who have received as of December 15, 2022 less than that sum certain.

118.   The Class Period is defined as the limitations time period applicable under each of the class claims for which Plaintiffs seek certification.

119.   Excluded from the Classes is anyone who is either an immediate family member to or employed by counsel for Plaintiffs in this action or any Judge to whom this case is assigned.

*Numerosity*

120.     There are dozens of complaints viewable online regarding the misconduct described herein.

121.     By Group Solar's own admission (supra), there are multiple customers who are owed Welcome Checks.

122.     Moreover, the written forms, *e.g.* the forms including the promise of Welcome Checks and the loan forms failing to disclose the Welcome Checks are boilerplate forms used routinely in Defendants' core business.

123.     And there are many more consumers that will be subject to these unlawful communications, policies and practices in the future.

124.     As such, it is obvious that the number of victims greatly exceeds 40 and the Classes are sufficiently numerous that joinder of all members is impracticable.

125.     Although the exact number of members of the Classes and their addresses are unknown to Plaintiffs, they are readily ascertainable from Defendants' records.

*Existence and Predominance of Common Questions*

126.     Common questions of law and fact exist as to Plaintiffs and all members of the Classes and predominate over questions affecting only individual members of the Classes.

127.     These common questions include:

   a)   Whether Defendants failed to deliver promised Welcome Checks to Plaintiffs;

   b)   Whether Defendants were required to and failed to disclose the promised Welcome Checks in loan documents;

   c)   Whether the failure to disclose the promised Welcome Checks rendered the TILA disclosures required under state law inaccurate;

d) Whether the disclosure of the Welcome Checks in promotional materials and/or work estimates constituted false advertising and/or a false and deceptive practice.

*Typicality*

128.   Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs are a member of the Classes and is subject to the same unlawful conduct as other members of the Classes.

129.   Thus, Plaintiffs' claims—based on the same facts and legal theories as the claims of all other members of the Classes—are typical of the claims of the Classes.

*Adequacy*

130.   Plaintiffs will fairly and adequately represent the interests of the members of the Classes. Their interests do not conflict with the interests of the members of the Classes they seek to represent.

131.   Plaintiffs have retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why Plaintiffs and their counsel will not vigorously pursue this matter.

*Superiority*

132.   A class action is superior to other available means for the fair and efficient adjudication of the claims at issue.

133.   The damages suffered by each individual member of the Class related to the Welcome Checks may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

134.    Further, it would be virtually impossible for each individual member of the Classes to redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, the court system could not.

135.    Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

136.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

137.    In the alternative, the Classes may be certified because:

- the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendants;

- the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

- Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## FIRST CLASS CLAIM FOR RELIEF
### (Deceptive Acts and Practices Unlawful, NYGBL § 349 *et seq.*)

138.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

139.    In the course of its dealings with Plaintiffs, Defendants have engaged in deceptive conduct in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of §349 independent of whether Defendants' conduct violated any other law.

140.    Defendants' deceptive conduct included, without limitation, using the false promise of Welcome Checks to induce consumers to transact business with Defendants.

141.    Defendants' conduct as alleged herein is "consumer oriented."

142.    Indeed, far from a "one shot transaction," Defendants engage in the allegedly unlawful conduct on a routine basis with a large number of consumers using standardized polices, procedures and form/boilerplate communications.

143.    Defendants' misconduct as set forth above is thus part of a recurring policy and practice.

144.    This misconduct includes, *inter alia*, inducing consumers into entering contracts by means of false promises.

145.    This misconduct also includes Solar Mosaic's and Salal Credit Union's recurring policy and practice of misinforming consumers regarding Solar Mosaic's and Salal Credit Union's legal obligations and responsibilities as assignees or otherwise.

146.    Each of these deceptive acts and practices is one that has a broad impact on consumers.

147.    Due to these violations of NYGBL § 349, Plaintiff has suffered actual damages and is entitled to:

- actual damages;

- treble damages;

- punitive damages;

- declaratory judgment that Defendants have violated the statute;

- injunctive relief barring Defendants from henceforth committing the deceptive acts and practices set forth herein;

- costs; and

- reasonable attorney's fees.

<u>SECOND CLASS CLAIM FOR RELIEF</u>
**(False Advertisement, NYGBL § 350)**

148.    Plaintiffs repeat and reallege each and every allegation contained above as though set forth here in full.

149.    Defendants' false representations regarding Group Solar's Welcome Checks constitute violations of New York General Business Law § 350 independent on whether these representations violate any other state or federal law or give rise to any other common law violation.

150.    With regard to the false written representations, Defendants' promotional materials and/or work estimates provided to consumers by sales representatives regularly promise Welcome Check(s), which are described as and which were used as incentives to induce consumers to transact with Defendants.

151.    The Welcome Checks were not delivered in full to the Class members.

152.    Defendants' false advertising was done knowingly and willfully and committed in bad faith.

153.    As a result of these violations of New York General Business Law § 350, Plaintiffs and the Class Members have suffered actual damages.

154.    For these reasons, Plaintiffs and the Class Members are entitled to:

- actual damages;

- declaratory judgment;

- declaratory relief that Defendants have violated New York General Business Law § 350;

- an injunction against the deceptive practices set forth herein;

- three times actual damages up to $10,000;

- punitive damages, costs; and

- reasonable attorneys' fees.

**THIRD CLASS CLAIM FOR RELIEF**
**(Breach of Contract)**

155.    Plaintiffs repeat and reallege each and every allegation contained above as though set forth here in full.

156.    Defendants promised the Class Members Welcome Checks in written proposals relating to the purchase and financing of solar panels.

157.    The parties agreed to the work proposal.

158.    Defendants did not deliver Welcome Checks in the promised amount.

159.    As a direct and proximate result of Defendants' breaches of contract, Plaintiffs and the Class suffered damages in the amount of the undelivered Welcome Checks.

## FOURTH CLASS CLAIM FOR RELIEF

### (New York Personal Property Law § 401 *et seq.* –Retail Instalment Sales Act)

160.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

161.    The Solar Panels that are the subject of the transactions at issue are "Goods" as defined under NYPPL § 401(1).

162.    The installation of the subject solar panels are "Services" as defined under NYPPL § 401(2).

163.    Defendants are "Sellers" or "Retail Sellers" or "Financing Agencies", as defined under § 401.

164.    Plaintiffs and the Class are "Buyers" or "Retail Buyers" under § 401(4).

165.    The transactions at issue are a "Retail instalment sale" or "sale" under § 401(5) and are pursuant to a Retail instalment contract or "contract under 401(6).

166.    Alternatively, the contracts at issue are retail instalment credit agreements as defined at §§ 401and 413

167.    Defendants' form contract does not comply with §  402, including *inter alia* §402(2) which requires that the contract contain the entire agreement of the parties, "including any promise whether made in writing or rally by the seller made as an inducement to the buyer to become a party to the contract" and including any promise incidental to negotiations.

168.    Specifically, the promised Welcome Checks are not listed in the contracts.

169.    The Truth In Lending Act is incorporated into New York's Personal Property Law pursuant to § 402(3)(b) and § 413(4).

170.    These disclosures require accurate, clear and conspicuous disclosure, *inter alia*, of all costs incident to the extension of credit.

171.     The promise of the Welcome Checks and the non-payment of the Welcome Checks renders these disclosures, including with regard to the amount financed, the finance charge and the APR materially inaccurate.

172.     As a result of violation of § 401, *et seq*., Plaintiffs are entitled to refund of an amount equal to the credit service charge or service charge imposed and the amount of any delinquency, collection, extension, deferral or refinance charge imposed, costs, and attorneys fees.

### FIFTH CLASS CLAIM FOR RELIEF

### (Unjust Enrichment)

173.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

174.     By virtue of not delivering the Welcome Checks, Defendants have been unjustly enriched at Plaintiffs' expense.

175.     It is against equity and good conscience to permit Defendants to retain the sums corresponding to the undelivered Welcome Checks.

### INDIVIDUAL CLAIMS

### FIRST INDIVIDUAL CLAIM FOR RELIEF

**(Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*)**
**Breach of Implied Warranty of Merchantability**
**As for Plaintiffs Mr. Garcia and Mr. Acevedo**

176.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

177.     Defendants are "suppliers" and/or "warrantors" within the meaning of the MMWA.

178.     Mr. Garcia and Mr. Acevedo are "consumers", as that term is defined in the MMWA.

179.     The solar panels sold to Mr. Garcia and Mr. Acevedo are "consumer products" within the meaning of the MMWA.

180.    There is no dispute resolution mechanism which applies to Mr. Garcia's and Mr. Acevedo's warranty disputes.  In the alternative, Defendants have no dispute resolution mechanism which is enforceable under the MMWA and/or Mr. Garcia's and Mr. Acevedo's good-faith attempts to resolve his dispute with Defendants, all of which were rebuffed, constitute compliance with any reasonable dispute resolution requirement.

181.    An implied warranty that the solar panels and their installation were merchantable arose by operation of law as part of the sale; and because the solar panels were expressly warranted, in writing, Defendants were unable to disclaim any implied warranties as a matter of law.

182.    Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief – (A) in any court of competent jurisdiction[.]

183.    At all relevant times, Defendant Group Solar was a retail merchant with respect to the goods sold to Mr. Garcia and Mr. Acevedo.

184.    In selling the solar panels to Mr. Garcia and Mr. Acevedo, Group Solar warranted that the solar panels and their installation were of a quality which would at least pass without objection in the trade, were of fair, average quality within the description, and were at least fit for ordinary purposes for which the solar panels were sold.

185.    In purchasing the solar panels, Mr. Garcia and Mr. Acevedo relied upon Group Solar's said warranty of merchantability, as well as upon representations and statements constituting express warranties which were made by Group Solar.

186.    As set forth in detail above, the solar panels and their installation were not of merchantable quality and were not suitable for ordinary purposes.

187.     Indeed, the solar panels were inoperable for an extended period of time.

188.     Because the solar panels and their installation were not of merchantable quality when sold in that, *inter alia*, they were not fit for the ordinary purposes for which they were to be used and would not pass in trade under the contract description, Group Solar breached the implied warranty of merchantability.

189.     As a result of the breach of implied warranty of merchantability, Mr. Garcia and Mr. Acevedo have suffered actual damages.

190.     Group Solar's breach of implied warranty of merchantability constitutes a violation of 15 U.S.C. § 2310(d).

191.     As a result of these violations, pursuant to MMWA § 2310(d), Mr. Garcia and Mr. Acevedo are entitled to actual damages, declaratory judgment that Defendants' practices violate the MMCWA, and reasonable attorney's fees, costs and expenses.

192.     Mr. Garcia and Mr. Acevedo are entitled to and reserve the right, at their discretion, to elect cancellation and rescission of the loan in lieu of the actual damages attributable to the solar panels' diminished value.

## SECOND INDIVIDUAL CLAIM FOR RELIEF

**(Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*)**
**Breach of Express Written Warranty**
**As for Plaintiffs Mr. Garcia and Mr. Acevedo**

193.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

194.     Group Solar created a written warranty that provides a written affirmation of fact related to the condition of the solar panels and the nature and quality of the workmanship of its technicians and as such created a written warranty under 15 U.S.C. § 2301(6).

195.     As the solar panels sold to Mr. Garcia and Mr. Acevedo suffer from significant

defects in their condition and as the solar panels were inoperable as sold and installed, Group

Solar has breached the written warranty.

196.     As a result of this breach, Mr. Garcia and Mr. Acevedo have suffered actual damages.

197.     Group Solar's breach of express warranty constitutes a violation of 15 U.S.C. §

2301(d).

198.     As a result of these violations, pursuant to MMWA 15 U.S.C. § 2301(d), Mr. Garcia

and Mr. Acevedo are entitled to actual damages, declaratory judgment that Defendants' practices

violate the MMWA, and reasonable attorney's fees, costs and expenses.

199.     Mr. Garcia and Mr. Acevedo are entitled to and reserves the right, at his discretion, to

elect cancellation and rescission of the loan in lieu of the actual damages attributable to the solar

panels' diminished value.

### THIRD INDIVIDUAL CLAIM FOR RELIEF

**(NYGBL § 350)**
**Unlawful False Advertising**
**As for Plaintiffs Mr. Garcia and Mr. Acevedo**

200.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

201.     Group Solar's false representations to Mr. Garcia and Mr. Acevedo, both orally and in

writing, regarding the condition of the solar panels and their installation, set forth above,

constitute violations of NYGBL § 350 independent of whether these representations violated any

other state or federal law or gave rise to any other common law violation.

202.     With regard to false written representations, Mr. Garcia and Mr. Acevedo refer, *inter

alia*, to the RIC, estimates, proposals, invoices, advertising materials, and financial calculation

worksheets.

203.    These oral and written misrepresentations, which were made prior to the sale of the

solar panels and for the purpose of inducing Mr. Garcia and Mr. Acevedo to proceed with the

purchase, constitute false advertising pursuant to NYGBL § 350, which defines "false

advertising" to mean:

> advertising, including labeling, of a commodity … if such advertising is
> misleading in a material respect.  In determining whether any
> advertising is misleading, there shall be taken into account (among other
> things) not only representations made by statement, word, design,
> device, sound or any combination thereof, but also the extent to which
> the advertising fails to reveal facts material in the light of such
> representations with respect to the commodity … to which the
> advertising relates under the conditions prescribed in said advertisement,
> or under such conditions as are customary or usual.

204.    Group Solar's false advertising was committed in the conduct of business, trade,

commerce or the furnishing of a service in this state.

205.    Group Solar's false advertising was done knowingly and willfully and committed in

bad faith.

206.    As a result of these violations of NYGBL § 350, Mr. Garcia and Mr. Acevedo

suffered actual damages.

207.    For these reasons, Mr. Garcia and Mr. Acevedo are entitled to injunctive relief

(enjoining the false advertising practices described above), actual damages, three times the actual

damages up to $10,000, punitive damages, costs and reasonable attorney's fees.

## FOURTH INDIVIDUAL CLAIM FOR RELIEF

### Breach of Contract
### As for Plaintiffs Mr. Garcia and Mr. Acevedo

208.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

209.    Mr. Garcia and Group Solar entered into a contractual agreement.

210.    Mr. Acevedo and Group Solar entered into a contractual agreement.

211.    The contracts required that Mr. Garcia and Mr. Acevedo pay a certain amount each month.

212.    In the contracts, Group Solar agreed to install functional solar panels.

213.    However, Group Solar failed to install operable solar panels.

214.    As a direct and proximate result of Defendants' breach of contract, Mr. Garcia and Mr. Acevedo suffered damages and are entitled to actual damages and costs.

## FIFTH INDIVIDUAL CLAIM FOR RELIEF

### Negligent Hiring, Retention, Training and Supervision
### As for Plaintiffs Mr. Garcia and Mr. Acevedo

215.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

216.    Group Solar, Solar Mosaic, and Daniel Yomtobian Corp failed to exercise reasonable care in selecting, instructing and supervising the employees and/or agents it hired to sell and install solar panels.

217.    Group Solar, Solar Mosaic, and Daniel Yomtobian Corp's employees and/or agents acted willfully, unlawfully and in an intentionally fraudulent manner towards Mr. Garcia and Mr. Acevedo as set forth herein.

218.    Group Solar, Solar Mosaic, and Daniel Yomtobian Corp did not properly train or supervise the employees and/or agents they use to sell and install solar panels.

219.    Group Solar, Solar Mosaic, and Daniel Yomtobian Corp owed a duty of care to Mr. Garcia and Mr. Acevedo that its employees and agents would act in accordance with state and federal laws.

220.    As a direct result and proximate cause of Group Solar, Solar Mosaic, and Daniel Yomtobian Corp's employees and/or agents' unreasonable, unfair, illegal and fraudulent conduct,

Mr. Garcia and Mr. Acevedo have suffered harm including, without limitation, the damages set forth above.

221.    As a result of the foregoing, Mr. Garcia and Mr. Acevedo are entitled to actual and punitive damages, and reasonable costs.

## SIXTH INDIVIDUAL CLAIM FOR RELIEF

**Unjust Enrichment**
**As for Plaintiffs Mr. Garcia and Mr. Acevedo**

222.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

223.    As described more specifically above, Mr. Garcia paid Group Solar for solar panels.

224.    After Mr. Garcia and Mr. Acevedo cancelled or attempted to cancel the solar panels, Group Solar refused to issue a refund.

225.    Group Solar has been unjustly enriched in the amount of the payments made by Mr. Garcia and Mr. Acevedo.

226.    It is unjust and inequitable for Defendants to retain such money given to them by Mr. Garcia and Mr. Acevedo without providing them with the services paid for.

## SEVENTH INDIVIDUAL CLAIM FOR RELIEF

**Rescission / Declaration of No Liability**
**As for Plaintiff Ms. Delacruz**

227.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

228.    As set forth above, Ms. Delacruz was not present at the signing of the RIC, did not sign the RIC, and did not authorize anyone to sign the RIC on her behalf.

229.    Ms. Delacruz would not have signed the RIC but for Group Solar's misconduct.

230.    Group Solar's misconduct was material and willful.

231.    Damages will not afford Ms. Delacruz a complete and adequate remedy and the status quo may be substantially restored by equitable relief.

232.    Ms. Delacruz is entitled to and hereby rescinds her contract to purchase the solar panels and all related contracts and services.

233.    As a result of these violations, Ms. Delacruz is entitled to rescission of the RIC as to herself and any related contracts, and costs and expenses, as well as a declaration that Ms. Delacruz is not liable for the transaction including its financing and including, *inter alia*, any purported termination fee.

## TWELTH INDIVIDUAL CLAIM FOR RELIEF

### New York GBL 380-S Theft of Identity
### As for Plaintiff Ms. Delacruz

234.    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

235.    N.Y. Gen. Bus. Law § 380-s makes liable any person, firm, partnership, corporation, or association or employee thereof who knowingly, and with the intent to defraud, obtains, possesses, transfers, uses, or attempts to obtain, possess, transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent.

236.    Group Solar violated this provision by knowingly and willfully creating a RIC in Ms. Delacruz's name and enforcing the fraudulent RIC.

237.    Group Solar's violation of the aforementioned provisions predictably resulted in the transmission of false information to one or more credit reporting agencies and this information would not otherwise have been provided to any credit reporting agency.

238.    As a result of these violations, pursuant to § 380-l, Defendants are liable to Ms. Delacruz for actual damages, punitive damages, attorney's fees and costs.

**WHEREFORE,** Plaintiff seeks judgment in her favor and damages against Defendants:

    A.    An order certifying this case as a class action under Fed. R. Civ. P. 23, naming

        Plaintiff as Class Representative, and appointing his attorneys as Class Counsel;

    B.    An award of actual damages, treble damages, statutory damages, punitive

        damages, attorney's fees and costs on both a Class and individual basis; and

    C.    such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: December 22, 2022

                                         */s/ Daniel A. Schlanger*
                                         Daniel A. Schlanger
                                         Schlanger Law Group LLP
                                         80 Broad Street, Suite 1301
                                         New York, NY 10004
                                         T: 212-500-6114
                                         F: 646-612-7996
                                         E: dschlanger@consumerprotection.net

                                         *Counsel for Plaintiff and the Putative Class*