**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RAFAL LOJEWSKI, SMITH GARCIA, DANIELLE GARCIA, MANUEL ACEVEDO, AND ISAMAR DELACRUZ, *on behalf of themselves and all others similarly situated,*

Plaintiffs,

v.

GROUP SOLAR USA, LLC, SOLAR MOSAIC, INC., SALAL CREDIT UNION AND DANIEL YOMTOBIAN CORP d/b/a SOLAR PROGRAM,

Defendants.

Case No.: 1:22-cv-10816-PAE

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SALAL CREDIT UNION'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS ALL CLAIMS AGAINST SALAL**

**GORDON REES SCULLY MANSUKHANI, LLP**

Peter G. Siachos, Esq.
**One Battery Park Plaza**
**New York, New York 10004**
**Tel: (973) 549-2500**
**Fax: (973) 377-1911**
**Email: psiachos@grsm.com**
*Attorneys for Defendant*
*Salal Credit Union*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................1

STATEMENT OF FACTS ....................................................3

I. Plaintiff's Allegations ....................................................3

II. The Applicable Arbitration Agreement ....................................................4

STANDARD OF REVIEW ....................................................5

I. Fed. R. Civ. P. 12(b)(6) ....................................................5

II. Federal Arbitration Act ....................................................6

ARGUMENT ....................................................7

I. The Court Should Compel Individual Arbitration ....................................................7

A. The Arbitration Clause is Binding and the Dispute Falls within its Scope ....................................................7

1. The Arbitration Clause is Valid and Enforceable ....................................................8

2. The Arbitration Clause Encompasses Plaintiffs' Claims ....................................................9

3. Arbitration Must Be Compelled On an Individual Basis Because Plaintiffs Waived Their Rights to Participate in a Class Action ....................................................10

4. The Class Action Waiver Requires Dismissal of the Class Claims ....................................................11

II. The Court Should Dismiss Plaintiffs' Claims Against Salal In Its Entirety For Failure To State A Claim ....................................................12

A. Salal Cannot Be Liable for any of Group Solar's Conduct Relating to the "Welcome Checks" Because the Holder Rule Does Not Apply ....................................................12

B. Plaintiffs' First Class Claim Also Fails To Allege Any Direct Liability against Salal ....................................................15

C. Plaintiffs' TILA-Based Fourth Class Claim Is Legally Defective ....................................................16

D. Mr. Acevedo's Breach of Warranty Claims (First, Second, Eighth and Ninth Individual Claims) Against SALAL Are Legally Defective ....................................................17

1. SALAL is Not a Warrantor Subject to MMWA Liability ....................................................17

2. Mr. Acevedo's "Implied Warranty" MMWA Claim is Inadequately Pleaded ....................................................18

3. Mr. Acevedo's New York UCC Claims Fail for the Same Reasons His MMWA Claims Fail ....................................................19

E. Mr. Acevedo's Third and Fifth Individual Claims for False Advertising and Negligent Hiring Are Inadequately Pleaded ....................................................20

F. Mr. Acevedo's Fourth and Sixth Individual Claims for Breach of Contract and Unjust Enrichment are Inadequately Pleaded ....................................................21

1. Mr. Acevedo's Breach of Contract Claim Is Impermissibly Vague ....................................................21

2. Mr. Acevedo's Unjust Enrichment Claim Is Duplicative ....................................................22

G. Ms. Delacruz's Rescission Claim Should Be Dismissed for Unreasonable Delay....23

H. Ms. Delacruz's Tenth Individual Claim for Identity Theft Fails to Allege the Required Element of Intent....24

CONCLUSION....25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*88 Blue Corp. v. Reiss Plaza Associates*,
183 A.D.2d 662 (1st Dept. 1992)....24

*Ackerman v. Coca-Cola Co.*,
2010 WL 2925955 (E.D.N.Y. July 21, 2010)....16

*Aerotel Ltd. V. RSL Communications, Ltd.*,
99 F.Supp.2d 368 (S.D.N.Y. 2000)....9

*Allen v. WestPoint-Pepperell, Inc.*,
945 F.2d 40 (2d Cir. 1991)....23

*Alvizo v. Metro Ford Sales & Serv., Inc.*,
No. 01 Civ. 2395 (MEA), 2002 WL 10470 (N.D. Ill. Jan. 3, 2002)....13, 14

*Angelillo v. Harte Nissan, Inc.*,
No. 3:09 Civ. 1313 (WWE), 2010 WL 569887 (D. Conn. Feb. 17, 2010)....17, 18

*Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*,
No. 22 Civ. 57 (PAE), 2022 WL 2905368 (S.D.N.Y. July 22, 2022)....19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5, 6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....10, 11

*Atkinson v. Mobil Oil Corp.*,
205 A.D.2d 719 (2nd Dept., 1994)....21, 22

*Baker v. Cuomo*,
58 F.3d 814 (2d Cir. 1995)....24

*Banque Arabe Et. Internationale D'Investissement v. Maryland Nat. Bank*,
850 F.Supp. 1199 (S.D.N.Y. 1994)....23

*Biggs v. Midland Credit Mgmt.*,
No. 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146 (E.D.N.Y. Mar. 9, 2018)....10

*Brecher v. Midland Credit Mgmt.*,
No. 18-CV-3142 (ERK) (JO), 2019 U.S. Dist. LEXIS 40590 (E.D.N.Y. Mar. 13, 2019)....10

*Camilo v. Uber Technologies, Inc.*,
2018 WL 2464507 (S.D.N.Y. May 31, 2018) ....................11

*Cont'l Indus. Grp., Inc. v. Altunkilic*,
788 F. App'x 37 (2d Cir. 2019) ....................22

*Cortlandt St. Recovery Corp. v. Bonderman*,
31 N.Y.3d 30 (2018). ....................11

*Diaz v. Paragon Motors of Woodside, Inc.*,
424 F.Supp.2d 519 (E.D.N.Y. 2006)....................17

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)....................8

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015)....................24

*Garcia v. Chrysler Grp. LLC*,
127 F.Supp.3d 212 (S.D.N.Y. 2015)....................18

*Gilbert v. Indeed, Inc.*,
513 F.Supp.3d 374 (S.D.N.Y. 2021)....................8

*GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*,
593 F.Supp.2d 471 (E.D.N.Y. 2009) ....................23, 24

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)....................7

*Greenfield v. Philles Records, Inc.*,
98 N.Y.2d 562 (2002) ....................11

*Grossman v. Simply Nourish Pet Food Company LLC*,
516 F.Supp.3d 261 (E.D.N.Y. 2021) ....................23

*Harris v. Dutchess Cnty. Bd. Of Co-op Educ. Servs.*,
25 N.Y.S.3d 527 (Sup. Ct. Dutchess Co. 2015)....................20

*Harris v. Pfizer Inc.*,
586 F.Supp.3d 231 (S.D.N.Y 2022)....................20

*Highland HC, LLC v. Scott*,
113 A.D.3d 590 (2d Dep't 2014)....................7

*In re Am. Express Fin. Advisors Secs. Litig.*,
672 F.3d 113 (2d Cir. 2011)....................8

*In re Schick*,
232 B.R. 589 (Bankr.S.D.N.Y. 1999)....23

*Islam v. Lyft, Inc.*,
524 F.Supp.3d 338 (S.D.N.Y. 2021)....8

*Izquierdo v. Mondelez Int'l, Inc.*,
2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26, 2016)....16

*Koch v. Acker, Merrall & Condit Co.*,
967 N.E.2d 452 (N.Y. 2012)....16

*Kudelko v. Dalessio*,
829 N.Y.S.2d 839 (N.Y. Civ. Ct. 2006)....25

*Lewis v. Abbott Labs.*,
No. 08 CV 7480, 2009 WL 2231701 (SCR) (S.D.N.Y. July 24, 2009)....19

*Locantore v. Hunt*,
775 F.Supp.2d 680 (S.D.N.Y. 2011)....6

*Locicero v. Intrust Bank, N.A.*,
No. 17 Civ. 61484, 2018 WL 4374908 (DPG) (S.D. Fla. Sept. 13, 2018)....13

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*.,
252 F.3d 218 (2d Cir. 2001)....9

*McCracken v. Thor Motor Coach Inc.*,
No. 15 Civ. 00029 (PHX), 2015 WL 13566917 (D. Ariz. Sept. 2, 2015)....13

*Mionis v. Bank Julius Baer & Co.*,
301 A.D.2d 104 (1st Dep't 2002)....11

*Morrison v. Hoffmann-La Roche, Inc.*,
No. 14 Civ. 4476 (DLI), 2016 WL 5678546 (E.D.N.Y. Sept. 29, 2016)....19

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
537 F.3d 168 (2d. Cir. 2008)....22

*Nicosia v. Amazon.com, Inc.*,
34 F.3d 220 (2d Cir. 2016)....6

*Oden v. Bos. Sci. Corp.*,
330 F.Supp.3d 877 (E.D.N.Y. 2018)....18, 19

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir. 1998)....10

*Owens v. Tranex Credit Corp.*,
1998 WL 35983384 (S.D. Ill. Aug. 11, 1998) ....................18

*Patellos v. Hello Prod., LLC*,
No. 19 Civ. 9577 (PAE), 2021 WL 827769 (S.D.N.Y. Mar. 4, 2021) ....................23

*Pierre v. Planet Auto., Inc.*,
193 F.Supp.3d 157 (E.D.N.Y. 2016) ....................18

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)....................10

*Quintanilla v. WW Int'l, Inc.*,
541 F.Supp.3d 331 (S.D.N.Y. 2021)....................22

*Ramadan v. Chase Manhattan Corp.*,
229 F.3d 194 (3d Cir. 2000)....................17

*Rattenni v. Cerreta*,
285 A.D.2d 636 (2nd Dept., 2001) ....................21

*Republic of Kazakhstan v. Chapman*,
585 F.Supp.3d 597 (S.D.N.Y. 2022)....................6

*Ryan v. JPMorgan Chase & Co.*,
924 F.Supp.2d 559 (S.D.N.Y. 2013)....................11

*Schauer v. Gen. Motors Acceptance Corp.*,
819 So. 2d 809 (Fla. Dist. Ct. App. 2002) ....................13

*Schenck v. State Line Tel. Co.*,
238 N.Y. 308 (1924) ....................23

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)....................7

*SEC v. Credit Bancorp, Ltd.*,
147 F.Supp.2d 238 (S.D.N.Y. 2001)....................24

*Serebryakov v. Golden Touch Transp. of NY, Inc.*,
No. 12-CV-3990 (NGG)(RER), 2015 WL 1359047 (E.D.N.Y. Mar. 23, 2015)....................9

*Simon v. Smith & Nephew, Inc.*,
990 F.Supp.2d 395 (S.D.N.Y. 2013)....................19

*Southland Corp. v. Keating*,
465 U.S. 1 (1984)....................6

*Stevens v. Kellar*,
112 A.D.3d 1206 (3d Dept. 2013) ....................21

*Sutphin Retail One, LLC v. Sutphin Airtrain Realty, LLC*,
143 A.D.3d 972 (2d Dep't 2016) ....................7

*Taylor v. Quality Hyundai, Inc.*,
150 F.3d 689 (7th Cir. 1998) ....................17

*Tsadilas v. Providian Nat. Bank*,
13 A.D.3d 190 (1st Dep't 2004) ....................11, 12

*Turner v. CIT Grp./Sales Fin., Inc.*,
154 Fed.Appx. 2 (9th Cir. 2005) ....................13

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960) ....................8

*Wales v. Arizona RV Centers, LLC*,
No. 14 Civ. 2115 (ILRL), 2015 WL 137260 (E.D. La. Jan. 9, 2015) ....................12

*Wolff v. Rare Medium, Inc.*,
171 F.Supp.2d 354 (S.D.N.Y. 2001) ....................22

**Statutes**

9 U.S.C. § 2 ....................1, 6,7

CPLR § 7503(a) ....................7

New York General Business Law § 349 ....................1, 4, 15, 16

New York General Business Law § 350 ....................1, 4, 20, 21

New York General Business Law § 380-s ....................4, 24

New York General Business Law § 380-n ....................25

New York Personal Property Law § 401 ....................1, 4, 17

15 U.S.C. § 2310(f) ....................1, 2, 4, 17, 18, 19

New York Uniform Commercial Code § 2-313 ....................4, 19

New York Uniform Commercial Code § 2-314 ....................4, 19, 20

Truth in Lending Act ....................16, 17

**Other Authority**

16 C.F.R. § 433.2(a)........................................................................................2, 12, 13, 14, 15, 17

40 Fed. Reg. 53524 (Nov. 18, 1975)...........................................................................................12

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 2, 3, 5, 6, 12, 25

**PRELIMINARY STATEMENT**

In this matter, Plaintiffs assert individual and class claims for, *inter alia* Defendants' alleged violations of the New York General Business Law ("NY GBL") §§ 349 and 350, New York Personal Property Law § 401 *et seq.*, breach of contract and unjust enrichment. Additionally, certain Plaintiffs assert individual claims for Defendants' alleged violation of the Magnuson-Moss Warranty Act (the "MMWA") 15 U.S.C. § 2301, *et seq.* Notwithstanding, the alleged claims herein as against Defendant Salal Credit Union arise from Plaintiffs' membership agreements with the Credit Union. Importantly, such agreements bound Plaintiffs' to arbitrate the alleged claims, as well as effectively waive class claims.

The Federal Arbitration Act's ("FAA") liberal policy in favor of arbitration requires named Plaintiffs Lojewski ("Mr. Lojewski"), Acevedo ("Mr. Acevedo") and Delacruz ("Ms. Delacruz") to arbitrate their grievances against Defendant Salal Credit Union ("SALAL") individually. They indicated their assent, when they signed their membership agreements with SALAL, to a broad arbitration provision where they agreed to arbitrate claims against SALAL arising out of or relating to their relationship to SALAL on an individual basis ("Arbitration Clause"). These Plaintiffs' claims fall within the scope of the Arbitration Clause, so they are required to arbitrate their claims.

For these reasons, SALAL respectfully requests the Court order such Plaintiffs to arbitrate their claims individually. Alternatively, assuming *arguendo* this Court finds these Plaintiffs are not required to arbitrate their claims individually, SALAL respectfully requests this Court dismiss all causes of action as against SALAL pursuant to Fed. R. Civ. P. (b)(6).

The basis for this action is conduct allegedly committed by Group Solar USA, LLC ("Group Solar"), a seller and installer of solar panels acting with sole responsibility in selling solar panels to homeowners without any involvement from SALAL. Each Plaintiff alleges to have two contracts,

each relating to a different aspect of the sale of solar panels by Group Solar. The first contract relates to alleged promises made by Group Solar regarding its incentive program to deliver "Welcome Checks" to Plaintiffs if they purchased solar panels. This program was devised by Group Solar with no involvement by SALAL. Furthermore, the checks were not products or services these Plaintiffs purchased with any credit extended by SALAL pursuant to each Plaintiff's second contract, which is a financing agreement entered into independently of the incentive program with one of multiple finance-company defendants, including SALAL. The financing agreements resulted in an extension of credit to each Plaintiff homeowner enabling them to pay for the solar panels and their installation.

All class claims involve the first contract—Group Solar allegedly misrepresented that it would provide, but did not provide, Welcome Checks to each Plaintiff as an incentive to agree to solar panel installations. Plaintiffs' lawsuit is devoid of *any* allegations of misconduct by SALAL. Instead, Plaintiffs imply (but do not explicitly allege) that SALAL is derivatively liable for Group Solar's misconduct by virtue of SALAL's financing agreements with certain Plaintiffs and a federal regulation, 16 C.F.R. § 433.2. That regulation, the "Holder Rule," requires credit contracts to contain a legend indicating that the holder of the contract (i.e. SALAL) is subject to "all claims or defenses" that the debtor (i.e. Plaintiffs) could assert against the seller (i.e. Group Solar). However, Plaintiffs fail to show that SALAL is liable under the Holder Rule because the Welcome Checks acted only as Group Solar's "inducement" for Plaintiffs to enter agreements. Thus, because the Welcome Checks are not the subject matter of any agreement between Plaintiffs and SALAL, SALAL cannot be held liable for any claims, whether class or individual, related to the Welcome Checks.

Additionally, each of Plaintiffs' individual claims against SALAL should each be dismissed. The first and second claims must be dismissed because SALAL is not a warrantor subject to Magnuson-Moss Warranty Act ("MMWA") liability. The third and fifth claims, based on the

Welcome Checks, should also be dismissed for the reasons stated above. Moreover, the third through tenth individual claims should be dismissed on the independent basis that Plaintiffs fail to adequately plead claims against SALAL for false advertising, breach of contract, negligent hiring, unjust enrichment, rescission/declaration of no liability, breach of express warranty, breach of implied warranty and identity theft. In addition, the seventh claim was not filed within the time period of the statute of limitations. Plaintiffs cannot maintain any derivative or direct claim against SALAL, so SALAL should be dismissed from this lawsuit.

SALAL respectfully requests the Court order Plaintiffs to individually arbitrate their claims against SALAL or, alternatively, dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## STATEMENT OF FACTS

### I. PLAINTIFFS' ALLEGATIONS

Salal only addresses the claims by Mr. Lojewski, Mr. Acevedo and Ms. Delacruz. The remaining Plaintiffs have no contractual relationship with Salal. Mr. Lojewski alleges that SALAL is an assignee to his financing agreement with Group Solar. *Dkt. No*. 36 ¶ 23. Mr. Acevedo and his daughter, Ms. Delacruz, allege the same. *Id.* ¶¶ 106-108. These three Plaintiffs also allege they were contacted by a Group Solar salesman (*Id.* ¶¶ 19, 80-83) who offered them "Welcome Checks" as an "inducement" to enter into the financing agreements, initially with Group Solar. *Id.* ¶¶ 2, 21, 93. The promise to pay "Welcome Checks" was memorialized in unsigned written proposals that Group Solar delivered to these Plaintiffs. *Id.* ¶¶ 22, 24, 94, 98. These Plaintiffs do not allege their respective financing agreements reference the Welcome Checks.

Ms. Delacruz alleges that she did not personally execute a financing agreement. *Id.* ¶ 105. According to the Amended Complaint, Ms. Delacruz's mother signed on her behalf. *Id.*

Mr. Lojewski allegedly told SALAL that his some of his Welcome Checks had not been delivered and he later reached out Group Solar to fix leaks on his roof due to the solar panel

installation. *Id.* ¶¶ 35, 37. Mr. Lojewski allegedly fixed the faulty installation himself. *Id.* ¶ 38. Likewise, Mr. Acevedo alleges he reached out to SALAL to state that his "Welcome Checks" had not been delivered (*Id.* ¶ 122) and reached out to Group Solar regarding his panels being inactive. *Id.* ¶¶ 116-117. His panels were activated in January 2022, allegedly one year after installation. *Id.* ¶ 119. In substance, SALAL responded to both these Plaintiffs questions regarding the Welcome Checks in the same way—SALAL was not involved in the incentive program. *Id.* ¶¶ 35, 123.

Plaintiffs filed the Amended Complaint against Group Solar, Solar Mosaic, Inc., SALAL, and Daniel Yomtobian Corp. d/b/a Solar Program based on class claims for violation of the NYGBL §§ 349 and 350, Breach of Contract, New York Personal Property Law § 401, and Unjust Enrichment. They also assert individual claims for Breach of Implied and Express Warranty under the MMWA, NYGBL § 350, Breach of Contract, Negligent Hiring, Retention, Training, and Supervision, Unjust Enrichment, Rescission/Declaration of No Liability, Breach of Express Warranty under New York Uniform Commercial Code ("N.Y. UCC") § 2-313, Breach of Implied Warranty under N.Y. UCC § 2-314 and Theft of Identity under NYGBL § 380-s.

## II. THE APPLICABLE ARBITRATION AGREEMENT

On November 10, 2020, Mr. Acevedo and Ms. Delacruz signed a membership application to become members of SALAL's credit union. *See* Declaration of Peter Siachos ("Siachos Dec.") Exh. A, at p. 2. On April 9, 2021, Mr. Lojewski also signed a membership application. *Id.* Exh. B, at p 2. By signing their respective applications, these Plaintiffs agreed to a provision therein that they would also be bound by the terms of SALAL's standard Consumer Membership and Account Agreement (the "Membership Agreement"). *Id*; *Id.* Exh. A, at p. 2. The Membership Agreement includes the mandatory Arbitration Clause in Section 31 with the bolded capitalized title "BINDING ARBITRATION":

All disputes or claims arising out of or relating to this Agreement, or your use of the Credit Union's products and services offered in the accounts covered under this Agreement, or the relationships that arise from this Agreement or your use of such products and services, whether based in contract, tort or otherwise, ***shall be resolved by binding individual arbitration***. This arbitration clause does not apply to disputes arising out of or relating to loans secured by real estate lending or loan servicing related to such loans.

and directly thereafter, "CLASS ACTION WAIVER":

**THE ARBITRATION SHALL BE SOLELY BETWEEN THE PARTIES TO THIS AGREEMENT – YOU AND THE CREDIT UNION. CLASS ARBITRATION, COLLECTIVE PROCEEDINGS OR OTHER REPRESENTATIVE PROCEEDINGS SHALL NOT BE PERMITTED, NOR SHALL YOUR ARBITRATION BE JOINED OR CONSOLIDATED WITH ANY OTHER ARBITRATION.**

**YOU ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT PRECLUDES YOU FROM FILING, PARTICIPATING IN, OR SEEKING ANY RELIEF OR RECOVERY FROM A CLASS ACTION LAWSUIT AGAINST THE CREDIT UNION PENDING IN ANY COURT.**

*Id.* Exh. C, at p. 34 (emphasis in original). Section 31 also sets forth the right of any member, like these Plaintiffs, to reject arbitration with no effect on any rights and obligations in the Membership Agreement. This subsection has a bolded capitalized title "OPTING OUT OF ARBITRATION":

> If you do not consent to arbitration, you must opt out of this arbitration clause by sending a written notice to the Credit Union within thirty (30) days of your receipt of this agreement. The opt-out notice shall be signed by you, mailed, and postmarked within the deadline to the Credit Union at:
>
> **Salal Credit Union**
> **Attention: Arbitration Opt Out**
> **PO Box 75029**
> **Seattle, WA 98175-0029**
>
> Absent a timely opt out, the arbitration clause will be binding. Opting out of this arbitration clause will not terminate this Agreement or affect any other rights and obligations you or the Credit Union have under the terms of this Agreement.

*Id.*, at p. 36.

## STANDARD OF REVIEW

### I. FED. R. CIV. P 12(B)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 677-78 (2009). On a Rule 12(b)(6) motion, the court is required to assess the legal feasibility of the Complaint and "must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Locantore v. Hunt*, 775 F.Supp.2d 680, 684 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). The Court is not bound to accept a legal conclusion couched as a factual assertion, nor should the Court accept "unwarranted deductions," "rootless conclusions of law" or "sweeping legal conclusions cast in the form of factual allegations." *Iqbal*, 556 U.S. at 663-6. For purposes of a motion to dismiss for failure to state a claim, a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

## II. FEDERAL ARBITRATION ACT

On a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment"; considering all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits. *See Republic of Kazakhstan v. Chapman,* 585 F. Supp. 3d 597 (S.D.N.Y. 2022). The FAA controls the interpretation and enforcement of the arbitration provision in the Arbitration Clause, mandating that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting Section 2 of the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

Under the FAA, a court must grant a motion to compel arbitration where, as here, a valid arbitration agreement exists and its scope governs the issues in the case. *Highland HC, LLC v. Scott*, 113 A.D.3d 590, 594 (2d Dep't 2014) (holding that the Court should have granted the motion to compel arbitration where the documents evinced agreement to arbitrate). The party resisting arbitration bears the heavy burden of demonstrating the arbitration agreement is invalid or the claims at issue do not fall under the arbitration agreement. G*reen Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). Plaintiffs cannot meet this burden.

If there is no "genuine issue of material fact" as to the arbitrability of the dispute, the Court may decide the motion without a trial. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). See also *Sutphin Retail One, LLC v. Sutphin Airtrain Realty, LLC*, 143 A.D.3d 972, 973 (2d Dep't 2016) (citing CPLR § 7503(a); "[w]here there is no substantial question whether a valid agreement was made or complied with, the court shall direct the parties to arbitrate").

## ARGUMENT

### I. THE COURT SHOULD COMPEL INDIVIDUAL ARBITRATION

The Arbitration Clause is governed by the FAA so the threshold question is whether the parties entered into an agreement to arbitrate. They did. By executing membership applications, Mr. Lojewski, Mr. Acevedo and Ms. Delacruz agreed to the Membership Agreement and assented to the Arbitration Clause. In so doing, they agreed that their claims in this dispute "shall be by binding individual arbitration." Siachos Dec., Exh. C, at p. 34. Additionally, per the Arbitration Clause, these Plaintiffs expressly agreed to waive any right to participate in a class action. *Id*. If the Court compels arbitration, which is warranted here, each of these Plaintiffs is only permitted to proceed on an individual basis, and not as a "class arbitration." *Id.*, at p. 35. These Plaintiffs do not allege that they opted out of the Arbitration Clause or class action waiver.

#### A. The Arbitration Clause Is Binding and the Dispute Falls within Its Scope

Plaintiffs' claims fall within the broad scope of the Arbitration Clause. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960). A broad arbitration provision raises a heightened presumption of arbitrability:"[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. at 584–85. Therefore, for the reasons set out below, SALAL respectfully submits that the Court should find that (i) the Arbitration Clause is valid and (ii) Plaintiffs' dispute falls within its scope. *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).

**1. The Arbitration Clause Is Valid and Enforceable**

Like federal law, "New York law favors arbitration, interfering as little as possible with the freedom of consenting parties to submit disputes to arbitration." *Islam v. Lyft, Inc.*, 524 F.Supp.3d 338, 359 (S.D.N.Y. 2021) (citations and quotations omitted). Thus, when parties intend to arbitrate, courts "enforce [such] agreements…according to their terms." *Gilbert v. Indeed, Inc.*, 513 F.Supp.3d 374, n. 11 (S.D.N.Y. 2021).

While the FAA governs the enforceability of the Arbitration Clause according to its terms, state law governs the determination of whether a valid agreement exists. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). In New York, whether parties have agreed to arbitrate their claims is a matter determined by state contract law. Here, the arbitration provision is in writing, conspicuously contains all material terms concerning the scope of the arbitration agreement and relinquishment of Mr. Lojewski's, Mr. Acevedo's and Ms. Delacruz's rights and interests, and most importantly, is signed by the parties to be charged. These facts, coupled with

the notion that the Amended Complaint is devoid of any allegation that the Arbitration Clause is invalid or unenforceable, means the parties agreed to the binding provision and New York law favors its enforcement.

**2. The Arbitration Clause Encompasses Plaintiffs' Claims**

After determining that the Arbitration Clause is valid and enforceable, the Court must decide whether the claims asserted herein are within its scope. This dispute unquestionably falls within the scope of the broadly-worded Arbitration Clause. Indeed, this Court has found that "a broadly-worded arbitration clause … creates a strong presumption in favor of arbitrability that applies with even greater force." *Aerotel Ltd. V. RSL Communications, Ltd.*, 99 F.Supp.2d 368, 372 (S.D.N.Y. 2000) (citations omitted).

The Arbitration Clause unequivocally states (i) that all claims that arise from the parties' (i.e. each of these Plaintiffs and SALAL) relationship arising from the Membership Agreement shall be decided by binding Arbitration, and (ii) sets forth the rights each Plaintiff waived. Thus, SALAL now seeks to invoke the mandatory, exclusive arbitration provision contained in the Arbitration Clause, which reads:

> All disputes or claims arising out of or relating to this Agreement, or your use of the Credit Union's products and services offered in the accounts covered under this Agreement, or the relationships that arise from this Agreement or your use of such products and services, whether based in contract, tort or otherwise, ***shall be resolved by binding individual arbitration***.

*See* Siachos Decl., Exh. C, at p. 34 (emphasis in original).

The Arbitration Clause's "very expansive language … suggest[s] a broad arbitration clause." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001); *Serebryakov v. Golden Touch Transp. of NY, Inc.*, No. 12-CV-3990 (NGG)(RER), 2015 WL 1359047, at *17 (E.D.N.Y. Mar. 23, 2015) (finding "any claim or controversy" language in arbitration clause is "obviously broad" and "undeniably one that might justify a strong

presumption of arbitrability"); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (provision requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof" was "easily broad enough to encompass [plaintiff]'s claim"); *Oldroyd v. Elmira Sav. Bank,*134 F.3d 72, 76-77 (2d Cir. 1998) (characterizing "[a]ny dispute, controversy or claim" language as "prototypical[ly] broad" and stating that claims which "touch matters" covered by an agreement with an arbitration clause must be arbitrated).

By executing the Arbitration Clause, these Plaintiffs agreed the very claims at issue in this litigation would be adjudicated by way of binding, individual arbitration. This is because the Arbitration Clause broadly defines the scope of the agreement as encompassing "any disputes or claims … whether based in contract, tort or otherwise" that relate to these Plaintiffs' relationships with SALAL. *Id.* Because these Plaintiffs' claims solely concern events arising out of their relationships with SALAL, the Arbitration Clause covers all of their claims against SALAL.

**3. Arbitration Must Be Compelled On an Individual Basis Because Plaintiffs Waived Their Rights to Participate in a Class Action**

As detailed above, in addition to agreeing to arbitrate, Plaintiffs also waived the right to proceed in any forum as a class member based on the express language of the Membership Agreement. *See Brecher v. Midland Credit Mgmt.*, No. 18-CV-3142 (ERK) (JO), 2019 U.S. Dist. LEXIS 40590, at *20 (E.D.N.Y. Mar. 13, 2019) ("Similarly, class action waivers, like the one in the Agreement, are valid and enforceable."); *Biggs v. Midland Credit Mgmt.*, No. 17-CV-340 (JFB)(ARL), 2018 U.S. Dist. LEXIS 41146, at *22 (E.D.N.Y. Mar. 9, 2018)(holding that "…because plaintiff waived her right to participate in a class in court or arbitration, the Court compels arbitration of plaintiff's claims on an individual basis and dismisses plaintiff's class action claims."). Moreover, "[r]equiring the availability of class wide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *AT&T*

*Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Pursuant to the Membership Agreement and the Supreme Court's interpretation of the FAA, Plaintiffs cannot institute a class action arbitration. Arbitration should be compelled on an individual basis in accordance with the express terms of the Arbitration Clause.

**4. The Class Action Waiver Requires Dismissal of the Class Claims**

Because the Court should enforce the Arbitration Clause and class action waiver, the Court should also either dismiss the class claims or strike the allegations as against SALAL in their entirety. Courts in this District have the authority, in granting a motion to compel arbitration on the basis of an enforceable arbitration provision and class action waiver, to simultaneously dismiss the class claims. *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp.2d 559, 565-6 (S.D.N.Y. 2013); *Camilo v. Uber Technologies, Inc.* 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018). Here, the compulsory Arbitration Clause requires these claims against SALAL to be arbitrated on an individual basis and thereby necessitates the dismissal of the class allegations as against SALAL in their entirety. Likewise, this Court should strike Plaintiffs' class allegations in their entirety as against SALAL on the basis of the class action waiver. *See Uber Technologies, Inc.* 2018 WL 2464507, at *3 ("the class action waiver … is valid and enforceable, and I grant Defendants motion to strike the class allegations.). Stated simply, Plaintiffs brought this putative class action in violation of the class-waiver provision.

Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002). "Courts are obliged to interpret a contract so as to give meaning to all of its terms," *Mionis v. Bank Julius Baer & Co.*, 301 A.D.2d 104 (1st Dep't 2002), and to avoid interpretations that "render any portion meaningless." *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30 (2018). "[A] contractual proscription against

class actions is neither unconscionable nor violative of public policy." *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190 (1st Dep't 2004). Here, Plaintiffs, in reading and signing their membership applications (thereby agreeing to the Membership Agreement with SALAL), each had a fair opportunity to make a reasonably informed decision as to whether agree to the term of the Membership Agreement. Therefore, the class-waiver provision succinctly bars these Plaintiffs' from proceeding on a class-basis. For the foregoing reasons, the Court should dismiss Plaintiff's class claims as against SALAL in their entirety.

## II. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST SALAL IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM

The Court should alternatively dismiss all causes of action as against SALAL in the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) as both individual and class claims fail as a matter of law. Specifically, Mr. Lojewski, Mr. Acevedo and Ms. Delacruz each fail to allege facts necessary to state a claim against SALAL.

### A. Salal Cannot Be Liable For Any Of Group Solar's Conduct Relating To The "Welcome Checks" Because the Holder Rule Does Not Apply

Derivative liability relating to the Welcome Checks cannot attach to SALAL under the Holder Rule.[1] The Holder Rule requires "that all consumer credit contracts generated by consumer sales include a provision which allows the consumer to assert his sale-related claims and defenses against any holder of the credit obligation." *Wales v. Arizona RV Centers, LLC*, No. 14 Civ. 2115 (ILRL), 2015 WL 137260, at *4 (E.D. La. Jan. 9, 2015) (citing 40 Fed. Reg. 53524 (Nov. 18, 1975)). The Holder Rule, codified at 16 C.F.R. § 433.2(a), states:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE

[1] Plaintiffs fail to allege a legal theory upon which Salal should be held directly liable for the conduct of Group Solar relating to the Welcome Checks. To the extent Plaintiffs imply that Salal can be held derivatively liable for Group Solar's conduct relating to the Welcome Checks based on the Holder Rule, such implication is legally improper, as discussed below. To the extent Plaintiffs do not imply that Salal can be held derivatively liable for Group Solar's conduct, all of the class claims in the Amended Complaint fails to state a claim against Salal.

> DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2(a). "Claims by borrower-purchasers against creditors or financiers under the Holder Rule are … derivative of claims against sellers." *McCracken v. Thor Motor Coach Inc.*, No. 15 Civ. 00029 (PHX), 2015 WL 13566917, at *2 (D. Ariz. Sept. 2, 2015) (citing *Turner v. CIT Grp./Sales Fin., Inc*., 154 Fed.Appx. 2, 3 (9th Cir. 2005)). Furthermore, the Holder Rule is "ordinarily used as a shield, not as a sword for consumers to seek affirmative relief." *Locicero v. Intrust Bank, N.A.*, No. 17 Civ. 61484, 2018 WL 4374908 (DPG), at *8 (S.D. Fla. Sept. 13, 2018) (citing *Schauer v. Gen. Motors Acceptance Corp*., 819 So. 2d 809, 813 (Fla. Dist. Ct. App. 2002).

In our case, nearly all of Mr. Lojewski's and Mr. Acevedo's (but none of Ms. Delacruz's) claims against SALAL relate to Group Solar's failure to provide the allegedly promised Welcome Checks.[2] However, these Plaintiffs concede the purported promises of the Welcome Checks were not a part of or made pursuant to their respective financing agreements with SALAL; at most, they were incidental to Group Solar's installment proposals. *See Dkt. No*. 36 ¶¶ 22, 24, 93, 94. The Amended Complaint also only alleges that the Welcome Checks were an attempt to "induce" the purchase of solar panels, not that they were either a specific contractual term or part of the substance of the financing agreements with SALAL.

This treatment is critically important because although the Holder Rule allows debtors to pursue claims against creditors uninvolved in the sale, it is limited. Holder Rule will not apply, like here, when the subject matter of a claim was not "obtained pursuant to the contract" with the vendor.

---

[2] All of the "Class Claims" for relief as against Salal rely on the non-payment of "Welcome Checks" (Dkt. 36 ¶¶ 151, 165, 173, 186, and 189), and Mr. Acevedo's third and fifth individual claims (*Id.* at ¶¶ 218, 233) hinge on the alleged non-payment of "Welcome Checks" and supposed misrepresentations related thereto.

*Alvizo v. Metro Ford Sales & Serv., Inc.*, No. 01 Civ. 2395 (MEA), 2002 WL 10470, at *2 (N.D. Ill. Jan. 3, 2002).

In *Alvizo*, the plaintiff entered into an installment contract for the financed purchase of a vehicle, later rescinding the transaction. *Id.* at *1. The vendor repossessed the vehicle. *Id.* at *2. The plaintiff alleged, *inter alia*, that the creditor was liable for the vendor's conversion of stickers attached to the car via the Holder Rule. *Id.* The court disagreed, finding that the creditor "should not be held liable under this provision on the ground that the FTC holder rule does not apply to the conversion of [plaintiff]'s property because that property was not obtained pursuant to the vehicle sales contract." *Id.* at 3. Therefore, "[creditor] could not be held liable for [vendor]'s conversion of the stickers." *Id.*

Like in *Alvizo*, the Welcome Checks cannot form the basis of derivative liability for SALAL via the Holder Rule because the checks not the subject matter of the financing agreements. The "promised Welcome Checks are not listed in the contracts" with SALAL *(Dkt. No.* 36 ¶ 183) and Group Solar's "promise" of the checks was purportedly made in a separate documents. *Id.* ¶¶ 22, 24, 94. Plaintiffs concede at the outset that the Welcome Checks were merely "an inducement to enter into transactions with Defendants." *Id.* ¶¶ 2. The Welcome Checks, like the stickers in *Alvizo*, are insufficient to invoke the Holder Rule; neither was the subject matter of the respective finance agreements. SALAL—like the creditor in *Alvizo*—cannot be liable under the Holder Rule for the vendor's alleged Welcome Check promises because the checks, as inducements, by definition *preceded* any transactions involving SALAL. *Id.* Accordingly, each of Mr. Lojewski's and Mr. Acevedo's Welcome Check claims fail because the Holder Rule is inapplicable.

This is consistent with a plain reading of the Holder Rule, limited to contracts for "goods or services obtained pursuant [t]hereto or with the proceeds [t]hereof." 16 C.F.R. § 433.2. Mr.

Lojewski and Mr. Acevedo concede that the Welcome Checks were promised pursuant to separate conversations and/or informal documents with a representative of Group Solar. *Dkt. No.* 36 ¶¶ 22, 24, 94, 183. This deficiency is more apparent since these Plaintiffs' Welcome Check allegations fundamentally differ from Plaintiffs Smith and Danielle Garcia's (the "Garcias"). The Garcias allege their Welcome Checks were intended to act as a "rebate of the first eighteen (18) months of scheduled payments" for their financing agreement with Defendant Solar Mosaic (*Dkt. No.* 36 ¶ 56), however Mr. Lojewski, Mr. Acevedo and Ms. Delacruz make no such allegations. Clearly, these Plaintiff's Welcome Check claims further violate the Holder Rule because they do not allege their Welcome Checks were in any way "obtained pursuant []to or with the proceeds" of their financing agreements. *See* 16 C.F.R. § 433.2. Sustaining derivative claims against SALAL for the Welcome Checks would improperly enable derivative claims outside the scope of the Holder Rule. Each of these Plaintiffs' class claims against SALAL, to the extent they rely on allegations related to the Welcome Checks, and their third and fifth individual claims, which also hinge on the Welcome Checks, should be dismissed.

### B. Plaintiffs' First Class Claim Also Fails To Allege Any Direct Liability against Salal For Consumer Deception

As explained in Section II.A., *supra*, nearly all SALAL's liability pursuant to the class claims fail because these Plaintiffs are unable to demonstrate that SALAL is derivatively liable. However, these Plaintiffs include an additional argument attempting to establish directly liability under the first class claim (NYGBL § 349) for "misinforming consumers regarding … [its] legal obligations and responsibilities as assignees or otherwise." *Dkt. No*. 36 ¶ 157. This argument likewise fails as a matter of law because Plaintiffs fail to allege that either (i) SALAL directly engaged in these deceptive practices <u>at the time when</u> Mr. Acevedo, Mr. Lojewski, Ms. Delacruz and the putative class entered into financing agreements and/or accepted solar proposals, or (ii)

SALAL's actions caused such Plaintiffs and the class members to suffer actual injury.

"An actual injury claim under Section 349 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Izquierdo v. Mondelez Int'l, Inc.*, 2016 U.S. Dist. LEXIS 149795, at *7 (S.D.N.Y. Oct. 26, 2016) (emphasis added); *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 452, 452 (N.Y. 2012). This prong is not satisfied absent an allegation of overpayment based on inaccurate representations. *Ackerman v. Coca-Cola Co.,* 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010).

Here, Mr. Lojewski, Mr. Acevedo and Ms. Delacruz identified no "materially misleading practice" committed by SALAL when they entered into their financing agreements. Nor have they alleged the unanticipated actions allegedly taken by Group Solar had occurred when these Plaintiffs entered into their financing agreements, and they certainly have not alleged that they overpaid for their solar panels when they entered into their financing agreements because of any allegedly inaccurate representation made by SALAL. What these Plaintiffs do allege, however, is that in each case SALAL's alleged conduct of providing misinformation only occurred after their alleged conversations with SALAL about Group Solar's conduct. *Dkt. No*. 36 ¶ 34, 35, 121-123. Thus, it is an impossibility that these Plaintiffs could have overpaid for their solar panels on account of SALAL's conduct. Because the Amended Complaint is devoid of any allegation suggesting that these Plaintiffs overpaid for their solar panels when they entered into their finance agreements because of any allegedly inaccurate representation made by SALAL at that time, Plaintiffs have failed to allege a GBL § 349 claim against SALAL for direct liability either. This claim must be dismissed to the extent it relies on this factual basis as well.

**C. Plaintiffs' TILA-Based Fourth Class Claim Is Legally Defective**

Plaintiffs' fourth class claim for relief seeks to hold SALAL liable based on the Truth in Lending Act ("TILA") as incorporated into New York's Personal Property Law. *Dkt. No.* 36 ¶¶ 175-187. Even if SALAL were subject to derivative liability for the actions of Group Solar under the Holder Rule, courts have consistently refused to apply the Holder Rule to TILA claims on the ground that the Holder Rule "cannot trump" TILA's fault-based liability rules. *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 200-201 (3d Cir. 2000); *see Diaz v. Paragon Motors of Woodside, Inc.*, 424 F.Supp.2d 519, 544 (E.D.N.Y. 2006) ("Every Circuit to address the issue has found that the specific provisions of TILA override the more general provisions of the Holder Rule."); *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 693-94 (7th Cir. 1998) (the Holder Rule "even though contained within the contract, was not the subject of bargaining between the parties, and indeed could not have been. It is part of the contract by force of law, and it must be read in light of other laws that modify its reach.").

Because Plaintiffs' TILA claims against SALAL are based on derivative liability via the Holder Rule, which cannot be applied to TILA claims, Plaintiffs' fourth class claim against SALAL necessarily fails. It should also be dismissed.

### D. Mr. Acevedo's Breach of Warranty Claims (First, Second, Eighth and Ninth Individual Claims) Against SALAL Are Legally Defective[3]

#### 1. SALAL is Not a Warrantor Subject to MMWA Liability

Mr. Acevedo's MMWA claims against SALAL fail because SALAL is not a warrantor for MMWA purposes and the Holder Rule does not override the MMWA's prohibition of liability as against SALAL as a contractual assignee. The MMWA "provides that 'only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against

[3] Mr. Lojewski asserts no individual claims.

such warrantor and no other person.'" *Angelillo v. Harte Nissan, Inc.*, No. 3:09 Civ. 1313 (WWE), 2010 WL 569887, at *5 (D. Conn. Feb. 17, 2010) (citing 15 U.S.C. § 2310(f)). Mr. Acevedo alleges that Group Solar—not SALAL—made the warranties at issue. Dkt. 36 ¶¶ 199, 200, 209. Accordingly, SALAL cannot be directly liable as the warrantor under the MMWA. *Angelillo*, 2010 WL 569887, at *5; *Owens v. Tranex Credit Corp.*, 1998 WL 35983384, at *16-17 (S.D. Ill. Aug. 11, 1998).

SALAL, as an assignee, also cannot be held derivatively liable under the Holder Rule. *Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 175 (E.D.N.Y. 2016) ("The Court finds that section 2310(f) of the MMWA trumps the Holder Rule and expressly prohibits Plaintiff from asserting her MMWA claim against … an assignee who did not create the warranty at issue."). Indeed, "[t]he plain text of the MMWA prohibits assignee liability where the assignee is not the person who created the written warranty." *Id; see also Angelillo*, 2010 WL 569887, at *5; *Owens*, 1998 WL 35983384, at *16-17. As Mr. Acevedo concedes, his contractual relationship *vis-à-vis* SALAL exists by assignment. *Dkt. No.* 36 ¶ 35. Accordingly, SALAL can be neither derivatively nor directly liable under the MMWA and the first and second individual causes of action against SALAL should be dismissed.

**2. Mr. Acevedo's "Implied Warranty" MMWA Claim is Inadequately Pleaded**

As this District has explained, "[t]o state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). "In order for a plaintiff to plead a claim based upon breach of an implied warranty, the following elements must be alleged: (1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect was the proximate cause of

the injury." *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 895 (E.D.N.Y. 2018), *adhered to on reconsideration*, No. 18 Civ. 0334 (SJF), 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019).

Mr. Acevedo has failed to plead these elements. The Amended Complaint does not make any allegation that Mr. Acevedo's solar panels were defective, only that they were inactive on his ConEdison account. *Dkt. No.* 36 ¶¶ 115, 118, 119. Mr. Acevedo then concedes that "the panels were officially activated in January 2022" without repair. *Dkt. No.* 36 ¶¶ 119. In fact, Mr. Acevedo does not allege in any way that the panels were defectively designed, and he does not detail any supposed defect. *See Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 407 (S.D.N.Y. 2013) (Engelmayer, J.) ("The Amended Complaint fails to allege that ... [the] device was defectively designed. It thus fails to state a claim for breach of implied warranty."); *Lewis v. Abbott Labs.*, No. 08 CV 7480, 2009 WL 2231701 (SCR), at *6 (S.D.N.Y. July 24, 2009); *Morrison v. Hoffmann-La Roche, Inc.*, No. 14 Civ. 4476 (DLI), 2016 WL 5678546, at *11 (E.D.N.Y. Sept. 29, 2016). In lieu of pleading any facts related to this claim, Mr. Acevedo's "implied warranty" claim refers to his claim for breach of express warranty. *See Dkt. No.* 36 ¶ 196. Mr. Acevedo's duplicative claim for breach of "implied warranty" under the MMWA should accordingly be dismissed.

### 3. Mr. Acevedo's New York UCC Claims Fail for the Same Reasons His MMWA Claims Fail

Mr. Acevedo's eighth and ninth individual claims for violations of N.Y. UCC §§ 2-313 and 2-314 rely on the same flawed factual basis as his MMWA claims, therefore they also fail as a matter of law. *Dkt. No.* 36 ¶¶ 251, 256.

Under § 2-313 of the N.Y. UCC, Mr. Acevedo must allege, in pertinent part "… (2) the buyer's reliance on th[e] warranty as a basis for the contract with the immediate seller, [and] (3) breach of the warranty…." *Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*, No. 22 Civ. 57 (PAE), 2022 WL 2905368, at *12 (S.D.N.Y. July 22, 2022) (citation and quotation marks omitted).

As explained in Section II.D.1, 2, *supra*, Mr. Acevedo fails to allege his solar panels were defectively designed or manufactured or provide any details about a defect. As to reliance, he alleges he "relied upon Group Solar's … warranty of merchantability, as well as upon representations and statements constituting express warranties which were made by Group Solar." *Dkt. No.* 36 ¶ 200. This is not enough. In *Antifun*, the plaintiff's § 2-313 claim was dismissed by the Court for pleading the same "threadbare" reliance allegations that the plaintiff "relied on [the warranty] … in making payment" without explaining how such warranty was "decisive." *Antifun*, 2022 WL2905368. at *13. Mr. Acevedo's eighth cause of action must be dismissed.

Likewise, Mr. Acevedo's § 2-314 claim that SALAL breached an implied warranty of merchantability fails as a matter of law. A § 2-314 claim "does not require that the goods be perfect or that they fulfill a buyer's every expectation," just that they are "of a minimal level of quality." *Harris v. Pfizer Inc.*, 586 F.Supp.3d 231, 245 (S.D.N.Y 2022) (citations and quotation marks omitted). Mr. Acevedo does not plausibly allege that his solar panels "failed to full [their] purpose" or were "unfit for [their] ordinary purpose." *Id.* In fact, he alleges they simply had not been activated on his account. *Dkt. No.* 36 ¶¶ 115, 118, 119. Mr. Acevedo has not plausibly alleged a violation of § 2-314 and his ninth individual claim should be dismissed.

### E. Mr. Acevedo's Third and Fifth Individual Claims for False Advertising and Negligent Hiring Are Inadequately Pleaded

Mr. Acevedo's third individual claim for a violation of NY GBL § 350 fails because it is inadequately pleaded. In New York, a plaintiff must plead the following elements: "(1) consumer-oriented conduct that is (2) materially misleading; and that (3) resulted in injury to Plaintiffs." *Harris v. Dutchess Cnty. Bd. Of Co-op Educ. Servs.*, 25 N.Y.S.3d 527, 538 (Sup. Ct. Dutchess Co. 2015). However, Mr. Acevedo does not allege how he was materially misled by any particular false advertisements, alleging only that he "came across an Instagram post … regarding the solar

panel program," and that he "was informed that the panels would be able to generate enough energy for all three (3) living spaces of his home." *Dkt. No.* 36 at ¶¶ 89, 95. Short of claiming that the solar panels *could not* generate energy for his three living spaces, he only alleges that the panels were actually "connected" to one floor of his home – there is no allegation that the solar panels would not or could not generate enough energy as he was allegedly informed. *Id*. at ¶ 119. Mr. Acevedo's allegations to support this claim are otherwise so sparsely pleaded that it is hard to even decipher what conduct allegedly violates NY GBL § 350.

Similarly, Mr. Acevedo's negligent hiring claim is completely unsupported by any factual allegations and must be dismissed. To establish this claim, a plaintiff must show "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Stevens v. Kellar*, 112 A.D.3d 1206, 1209 (App. Div. 3d Dept. 2013). The Amended Complaint contains no allegations that support or explain this claim with any particularity and it must fail under *Iqbal*. To the extent Mr. Acevedo alleges particular actions taken by any Group Solar employees, he provides no support for the requirement that Group Solar knew or should have known its employees had a propensity for the allegedly injurious conduct. *Id.* (finding that even an employer's prior knowledge of an employee's propensity to cause the plaintiff's type of injuries was not enough on its own to show a violation).

For the foregoing reasons, the third and fifth individual claims should be dismissed.

### F. Mr. Acevedo's Fourth and Sixth Individual Claims for Breach of Contract and Unjust Enrichment are Inadequately Pleaded

#### 1. Mr. Acevedo's Breach of Contract Claim Is Impermissibly Vague

To plead a viable cause of action for breach of contract, Mr. Acevedo is at minimum required to allege the provisions of the contract upon which the cause of action is based. *Rattenni v. Cerreta*, 285 A.D.2d 636 (2nd Dept., 2001); *Atkinson v. Mobil Oil Corp.*, 205 A.D.2d 719 (2nd

Dept., 1994); *Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 358 (S.D.N.Y. 2001) (dismissing breach of contract claim because plaintiffs failed to identify the contractual provisions that defendant breached). Here, the Amended Complaint is bereft of any reasonably identifying allegations as to which of several contracts allegedly at issue, or their corresponding contractual provisions, were allegedly breached. *Dkt. No.* 36 at ¶¶ 103, 107, 108, 226-228. Instead, Mr. Acevedo alleges that Group Solar failed to pay unspecified amounts and perform unspecified installation obligations pursuant to unidentified terms of an unspecified number of vaguely described agreements. *Dkt. No.* 36 at ¶¶ 227, 228. This is insufficient to state a claim against SALAL. *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 350 (S.D.N.Y. 2021) ("To plausibly allege a breach of contract, a plaintiff must identify 'the specific provisions of the contract upon which liability is predicated.'") (internal citations omitted). This claim should be dismissed.

**2. Mr. Acevedo's Unjust Enrichment Claim Is Duplicative**

Mr. Acevedo's sixth individual claim for unjust enrichment impermissibly duplicates the other contract, tort and statutory causes of action. *Compare Dkt. No.* 36 at ¶ 242 (unjust enrichment claim alleging Defendants did not provide Mr. Acevedo "the services paid for") *with id.* at ¶ 229 (breach of contract claim alleging that Group Solar "failed to install operable solar panels"). A claim for unjust enrichment "is not available where it simply duplicates … a conventional contract or tort claim." *Cont'l Indus. Grp., Inc. v. Altunkilic*, 788 F. App'x 37, 43 (2d Cir. 2019) (citations omitted). "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d. Cir. 2008). Mr. Acevedo's unjust enrichment claim is premised on the same factual allegations as those supporting his other claims and he has not alleged distinct damages. Dkt. 36 ¶ 241. He only alleges Defendants have been unjustly enriched by his payments. *Id.* Given that Mr. Acevedo's

unjust enrichment claim is duplicative of other claims raised in the Amended Complaint, it must be dismissed. *See Grossman v. Simply Nourish Pet Food Company LLC*, 516 F.Supp.3d 261, 285 (E.D.N.Y. 2021) (dismissing unjust enrichment claim that "duplicate[d] the plaintiff's other claims, which ar[o]se out [of] identical facts); *Patellos v. Hello Prod., LLC*, No. 19 Civ. 9577 (PAE), 2021 WL 827769 (S.D.N.Y. Mar. 4, 2021) (Engelmayer, J.) (unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff").

### G. Ms. Delacruz's Rescission Claim Should Be Dismissed for Unreasonable Delay

The seventh individual claim fails because Ms. Delacruz, whether out of ignorance or intent, neglected to promptly bring her claim of rescission. Indeed, "[p]romptness is an element of a *prima facie* rescission action and the burden of proof is on plaintiff." *Banque Arabe Et. Internationale D'Investissement v. Maryland Nat. Bank*, 850 F.Supp. 1199, 1210 (S.D.N.Y. 1994) (aff'd, 57 F.3d 146 (2d Cir. 1995)). For rescission to be effective it "must be announced without unreasonable delay." *Schenck v. State Line Tel. Co.*, 238 N.Y. 308, 313 (1924) (Cardozo, J.); *accord*, *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 47 (2d Cir. 1991). "The principle of promptness is a fairly stringent requirement … [e]ven where a party does not have full knowledge of the fraud, he can be held to have been delinquent in raising the rescission claim." *Banque Arabe*, 850 F.Supp. at 1210. (internal citations and quotations marks omitted).

Courts have repeatedly held that unreasonable delay in bringing a rescission action renders such claim barred as a matter of law. *See In re Schick*, 232 B.R. 589, 597 (Bankr.S.D.N.Y. 1999) (delay of just over two years); *GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 593 F. Supp.2d 471, 484 (E.D.N.Y. 2009) (insurer's ten-month delay with full knowledge of facts

is unreasonable); *SEC v. Credit Bancorp, Ltd.*, 147 F.Supp.2d 238, 267-57 (S.D.N.Y. 2001) (delay of more than a year); *88 Blue Corp. v. Reiss Plaza Associates*, 183 A.D.2d 662, 664 (App. Div. 1st Dept. 1992) (11-month delay bars rescission).

Here, the initial Complaint was filed on December 22, 2022. *Dkt. No.* 1. Ms. Delacruz's mother allegedly signed the financing agreement on her behalf on November 11, 2020, over two years before this action was filed. *Dkt. No*. 36, ¶ 100. Even assuming Ms. Delacruz was not immediately aware, she concedes she learned the next month since she was "getting charged for the month of December [2020]," which is just over two years of delay and unreasonable by law. *Id.* Ms. Delacruz's rescission claim should be dismissed.

### H. Ms. Delacruz's Tenth Individual Claim for Identity Theft Fails to Allege the Required Element of Intent

A violation of NY GBL § 380-s "occurs when someone misappropriates another person's name … to engage in fraud or other crimes." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 441 (2d Cir. 2015). It must be done "knowingly and with … intent to defraud." NY GBL § 380-s. Ms. Delacruz simply does not allege that Group Solar's employee, in suggesting her mother "could sign on her behalf" did so both knowingly and with the intent to engage in fraud. *Dkt. No*. 36, ¶ 105. The alleged use of the word "could" by Group Solar's employee implies a mere suggestion and clear lack of intent to defraud. Without any allegation of the intent element required to adequately plead a violation of NY GBL § 380-s, the tenth individual claim also must be dismissed.

The Court should also dismiss this claim because the statute of limitations has passed. Dismissal is "appropriate if it appears from the face of the complaint that the action is barred ... by the statute of limitations." *Baker v. Cuomo*, 58 F.3d 814, 818-819 (2d Cir. 1995), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996). The statute of limitations is two years after discovery.

*Kudelko v. Dalessio*, 829 N.Y.S.2d 839, 841 (N.Y. Civ. Ct. 2006); NY GBL § 380-n. As discussed, *supra*, Ms. Delacruz learned of the alleged violation at the more than two years before the initial Complaint was filed. *See Dkt. No.* 36, ¶ 100. Therefore, the statute of limitations has passed and this claim must be dismissed.

**CONCLUSION**

For the reasons stated, the Court should compel Plaintiffs to arbitrate their claims individually against SALAL and dismiss the class claims on the basis of the class action wavier provision or, alternatively, dismiss all claims against SALAL in the Amended Complaint pursuant to Rule 12(b)(6) and dismiss SALAL as a party from this lawsuit in its entirety with prejudice, and for other and further relief this Court may deem just and proper.

Dated: April 21, 2023

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI LLP**
*Attorneys for Salal Credit Union*

By: */s/ Peter G. Siachos*
Peter G. Siachos, Esq.

One Battery Park Plaza, Floor 28
New York, New York 10002
T: (973) 549-2500
F: (973) 377-1911
E: psiachos@grsm.com